EL DORADO ICE & COLD STORAGE COMPANY v. DINGLE & KINCAID.

Opinion delivered April 4, 1927.

JUSTICE OF THE PEACE—ORDER DISMISSING APPEAL—REFUSAL TO SET ASIDE.—Where a cause was pending in the circuit court on appeal from a justice of the peace for more than nine months, and defendant's manager neglected to inquire when the case would be tried, it was not an abuse of discretion to refuse to set aside an order of dismissal on defendant's failure to be ready for trial on the day when the cause was set for trial.

Appeal from Union Circuit Court, Second Division; W. A. Speer, Judge; affirmed.

J. R. Wilson, for appellant.

J. S. Brooks, for appellee.

MEHAFFY, J. On the 9th day of January, 1925, the appellees, plaintiffs below, filed suit in the justice court against the appellants for $300 for labor and material furnished defendants by plaintiff. Summons was issued, returnable on the 20th day of January, 1925, and summons was returned, served by delivering copy to M. B. Morgan, manager for El Dorado Ice and Cold Storage Company, more than 10 days previous to the day of trial. On the 31st day of January, 1925, M. B. Morgan filed affidavit for appeal and bond in the sum of $350. The transcript was filed in the second division of the circuit court within 30 days. On the 14th day of September, 1925, the circuit court met and set cases covering a period of two weeks, beginning the 19th of October, and, among others, this case was set. The court announced to the bar, on the 14th day of September, that a term of court would be held beginning on the 19th of October and

to be in session two weeks, in order to try cases and dispose of the crowded condition of the docket.   Announcement was made several times during the term of the court, and request was made that all members of the bar be present on the day designated by the court, which was September 26.   This case was set on September 26 for the 22d day of October.

When this case was called for trial neither the defendant nor his counsel was present, and no announcement was made by the defendant or his attorney, and the case was dismissed.   The court had been informed that the defendant's regular attorney was sick, but that said attorney had employed other counsel to handle this case in order to be ready when the case was called.   Shortly after the case was dismissed the defendant's attorney appeared and filed a motion to set aside the order dismissing the appeal, in which he alleged that the defendant's manager had been in Little Rock attending Federal court in the trial of an important case, and did not learn of the setting of the case until the day before the appeal was dismissed. Defendant's motion to set aside the order dismissing the appeal was as follows:

"Comes the defendant, the El Dorado Ice & Cold Storage Company, and represents to the court that the above cause was set down for trial in this court for the 22d day of October, 1925, and neither the manager of defendant company nor his attorney was aware of the setting of said cause for trial, and knew nothing of the setting until the morning that the cause was called for trial.

"The defendant's manager, M. B. Morgan, whose business it was to look after all litigation of the company, had been engaged in the preparation and trial of the cause of King v. The Republic Power & Service Company the entire time since the latter part of the preceding week.   That was a suit for damages in the sum of $35,000 claimed against the defendant in that suit, and that trial required the presence of the said M. B. Morgan in the United States District Court, Little Rock, Arkansas, and

the defendant in this case was wholly unprepared and unable to go into the trial of this case when called, and his attorney knew nothing about the facts in the case, and had no opportunity to interview the witnesses, but offered to get the witnesses together if allowed time until 11 A. M. of the 22d day of October, 1925, and, had the defendant's attorney's request been granted by the court, the defendant could and would have been ready to go to trial at 11 A. M., as above indicated.

"The defendant had a meritorious defense to the claim sued on herein, which defense was as follows: The plaintiffs offered to install low-pressure gas burners at defendant's plant at Smackover, Arkansas, and take as their pay one-half the saving in cost of fuel over the preceding month's bill. The result of that experiment was a loss, and not a saving for the defendant.

"The plaintiffs admitted the truth of the above statement, and asked permission to try it another month, and the result of the month's experiment was a loss, and not a saving.

"The plaintiffs, in a further effort to demonstrate the efficiency of their low-pressure burners, got permission from M. B. Morgan to install the same style burners in the El Dorado plant of the above named defendant, and took out of the El Dorado plant six gas burners owned by M. B. Morgan, of the value of $65 each, and took them away, without any authority from the said M. B. Morgan, and appropriated them to plaintiffs' own use, and the plaintiffs have never returned to ascertain the character of service given by the burners installed by plaintiffs at the El Dorado plant. No price was ever made or agreed upon for the new burners, but the price was to be determined by the saving on fuel in the first month's service, just as in the case of the Smackover agreement.

"The first specific claim of plaintiffs' cause of action was made known to M. B. Morgan months afterward, when one Kincaid called and demanded $50 each for the burners, and the said Kincaid was informed that

the said defendant did not care to retain the burners, but wanted them removed and the defendant's old burners restored, to which Kincaid replied that he did not know where the old burners were, and attempted to get the defendant to keep their burners and pay $150 for the whole claim, and the defendant refused because the actual records show a loss on the new burners over the old burners.

"The next the defendant heard from this claim was about sixty days ago, when a laborer for Dingle & Kincaid claimed that Dingle & Kincaid were gone and had no further interest in this claim; that the said Dingle & Kincaid had transferred all their interest in the claim to the said Bland, one of their laborers, and that he was the sole owner of the said claim, and offered to take, and demanded, the sum of $150 in full settlement thereof.

"Your petitioner would represent that the above statement of the facts constitutes a full and complete defense to the plaintiffs' claim and cause of action, and that your petitioner would have established the facts above detailed by at least three competent witnesses, and that these witnesses could have been produced in court in two hours' time after the defendants learned that this case was set down for trial.

"Your petitioner prays the court to set aside its former order dismissing the appeal in this cause and reinstate the said cause upon the said docket of this court, and set the case down for trial on its merits, in order that the defendant may be given an opportunity to show that these plaintiffs have no interest in this cause of action and that the owner of this cause of action is not a party to this record, and that, in truth and in fact, the defendant is not indebted to the plaintiff nor to the owner of the alleged cause of action in the sum of $300 nor any other sum, but that the plaintiffs are indebted to the defendant for the six burners converted by the plaintiffs, in the sum of at least $300 as the cash value of the burners at the time of conversion, and, in order to impose no undue burden on the plaintiffs in this cause of action,

the defendant agrees to be taxed with the cost of the proceedings had on the 22d day of October, 1925, in this cause, including the cost of plaintiffs' witnesses, if any, as shown by the certificates issued in their behalf, and the defendant agrees and offers to comply with such orders and reasonable requirements as the court may make or impose, in order that the parties to this action may have a fair and equal opportunity to have their rights determined by a jury, under appropriate instructions from this honorable court, and for such other and further general relief as may be meet and proper, the defendant will ever pray.''

The motion was subscribed and sworn to by M. B. Morgan on the 30th day of October, 1925. And on said day the court denied the motion of defendant, and defendant thereupon filed its motion for a new trial for the following reasons: First, that the order and judgment of the court was contrary to the evidence introduced on the motion; second, that the order and judgment of the court on the motion was contrary to the law; third, that the order and judgment of the court was contrary to both the law and the evidence.

• Court overruled defendant's motion for a new trial; defendant excepted, prayed an appeal to the Supreme Court, which was granted, and defendant was given 120 days within which to file its bill of exceptions.

M. B. Morgan testified for the defendant, on the motion to set aside the order of dismissal, that he is manager of El Dorado Ice & Cold Storage Company; that he has heard the reading of this petition to the court, and knows the facts upon which the petition was based. He was asked to state to the court why he was not here and did not know anything about the setting of the case at the time it was set for trial in this court, and replied that, the week before the case was set for trial, "I was in Little Rock, in a case in the Federal court before Judge Trieber, and I was busy the entire week in preparing the evidence in that case, which was a $35,000 damage

suit, and I did not return to El Dorado until late Sunday night, and I did not know of the suit.''

Upon further questioning, witness stated that it was Wednesday night that he meant he returned to El Dorado, and did not know of the suit until next morning about 9:15 o'clock, and that he was sick in bed when he was called up for the suit, and that was the reason that he was not at the office so that he could be reached about 8:30, and that he got up here after the case had been dismissed—about 30 minutes after it was dismissed—and that, if he had been given until 11 o'clock, he could have had his witnesses here; the witnesses were in Smackover, and he could have reached them by telephone, and he would have done so. Witness was then asked to state his defense in this action, and he stated it as follows:

''Our defense is this: That Mr. Kincaid came to me here and suggested that they had a low-pressure boiler (burner) which was more efficient than the Victory, which I was using, and asked the privilege of installing two of them in our Smackover plant, with the understanding that he was to receive one-half of the saving effected in the next month's service, so we consented to let him put these in there. Our bill at that time was running normally, if I remember correctly, about $600, and it was increased over the preceding month about $225. • He continued to tinker with the burners, and attempted to reduce the bill for possibly sixty days, but all during that time the gas consumption was increasing over our former service. Still thinking that he could reduce our bill, he came to me and stated that, if he could have his men watch them, and see what the trouble was, and asked my permission to put them in at the El Dorado plant, where it would be more convenient for him to look after them; and, with the same understanding we had had before, I gave him permission to install them at the El Dorado plant. After that time Kincaid and Dingle left town, and I had never seen either one of them since then. The reason we are still using the burners is because he took our old burners off, took them away from the premises, and we

didn't have anything to use if we took these burners out. About April or May of this year Mr. Kincaid himself came over from Shreveport, and demanded—in fact, rendered me a bill for $50 apiece for the burners, and I informed him that I had not reached any agreement with Dingle to purchase the burners until they had shown their efficiency, and that they had not done, and I told him the facts of the agreement, and he attempted to settle on the basis of $150, and I advised him, at that time, that we didn't want the burners, that they were not satisfactory, and we would rather have our old burners returned to us.''

Witness was further examined and cross-examined at length, but we deem it unnecessary to set out any more of the testimony, because the only question in the case is whether the court abused its discretion in refusing to set aside the order of dismissal.

It appears from the record that the suit was begun in justice court on the 9th day of January, 1925, and, while Morgan states that he was not served with summons, the return of the officer shows that he was served, but whether he was served or not is now immaterial, because, on the 31st day of January, 1925, Morgan filed an affidavit for appeal, and his appeal was perfected by filing his transcript with the clerk of the circuit court, as required by law, and this, of course, had to be done before the expiration of 30 days from the 9th day of January. He therefore knew that his case was pending in the circuit court at least from about the 10th day of January to the 22d day of October, more than nine months. It also appears that his regular attorney was sick, and had made arrangements with another attorney to try the case for him. Since he filed the appeal himself, knew that it was on the circuit court docket, and knew that it would be for trial, he should have made some inquiry as to when it would be tried. Evidently the appellant and his attorney knew that court was in session in El Dorado, and evidently knew the time of its meeting in the morning. Since they knew all these facts, it was their

duty to give some attention to the matter, and Morgan, before he came to Little Rock to try his case here, could have ascertained, or had his attorney ascertain, whether or not his case was set for trial in the Union Circuit Court. The trial court announced, when he overruled the motion, that the court was in session beginning with the 14th day of September; that announcement had been made for the members of the bar to attend, and that this announcement was made several times. These things were all done in open court, and the trial court had a knowledge of all the facts, and the setting aside the order of dismissal is like the granting or refusing a continuance in a case. It is a matter that is in the discretion of the court. It was a question for the trial court to determine whether the appellant had used due diligence to ascertain when his case would be tried, and due diligence in the preparation for the trial.

"Questions as to the trial or the continuance of causes rest so much in the sound discretion of the trial court that it must be a very capricious exercise of power or a very flagrant case of injustice that the appellate court will interpose to correct.   *   *   *   Continuances are largely in the discretion of the court, and that discretion will not be controlled unless there is a manifest abuse of it." *Spear Manufacturing Co.* v. *Shinn*, 93 Ark. 346, 124 S. W. 1025.

The trial court heard the motion and the argument on the motion, knew all the facts and circumstances, and this court has said: "The general rule is that continuances in criminal as well as in civil cases are in the sound discretion of the court, and that a refusal to grant a continuance is never ground for a new trial, unless it clearly appears to have been an abuse of such discretion and manifestly operates as a denial of justice." *Eddy* v. *State,* 165 Ark. 289, 264 S. W. 832.

"Granting or refusing a continuance in a criminal case is discretionary, and this court has many times held that the trial court's action will not be disturbed unless it

appears that there was an abuse of discretion. *Burt* v. *State,* 160 Ark. 201, 256 S. W. 361.

We cannot say in this case that the trial court abused its discretion in refusing to set aside its order of dismissal, and the judgment is affirmed.